Our next case for argument is Noreja v. Commissioner, SSA May it please the Court? Counsel? My name is Larry Saunders and I'm representing the appellant, Arthur Noreja. I know recently this Court asked for a supplemental briefing on two additional issues. The first issue was, does this Court have authority or jurisdiction to consider the failure of an administrative law judge to follow a remand order from the Appeals Council? And it seems like both parties are in agreement that this Court does have jurisdiction over this issue, and so I wasn't going to comment further on this, just rely upon the supplemental briefing unless somebody had a question. The second issue raised, I think, leads kind of into the heart of the dispute between the parties. The second issue was, assuming the Court has such authority or jurisdiction, when does a failure to follow a remand order justify a reversal? And I think both parties are in agreement that there has to be some harm caused by the administrative law judge's failure to follow the Appeals Council's order for a remand. And the main disagreement, I think, between the parties on this entire appeal is whether there was actually any harm by the administrative law judge not following. Just a quick question. Following the ALJ's decision following remand, was there a subsequent appeal then to the Appeals Council in which the failure to quote, follow the remand order, end quote, was raised before the Appeals Council? Yes. It has to go there first before it can go to the federal court system, so it was raised there. And what precisely did the Appeals Council say? That the failure to follow their remand order was not relevant, it was not significant. What was the panel's ruling? I'm still puzzled over that myself. I've read the remand order a number of times, and it's very conclusory. It just says, it was basically saying it was okay, but there's no justification why it would have been okay. They gave it their blessing. They said, well, it's good enough. That's basically it. And with really no intellectual justification whatsoever. And I don't think the Appeals Council actually has the authority to ignore the federal regulation that applied to its own remand order, which does require the administrative law judge to comply with the order of remand. So I don't think the Appeals Council can simply just waive that as an issue. Why don't we call the first appeal that resulted was the remand order, and why don't we call the second appeal the decision on the remand order? Fair enough? Fair enough. Because you're calling both of the remand orders, and that's, I think, contributing to the confusion. I agree with the Court's assessment of procedurally the best language to use. And anyways, I think we're, the heart of the dispute in this case is whether there was harm done by the administrative law judge's failure to follow that order of remand, and our position is that it was very harmful. But the Appeals Council's decision was that it was not. The decision on appeal basically forgave the ALJ's noncompliance. That's what they wrote without really explaining why that is true. And I don't know how they could come up rationally with that opinion. Well, I mean, at the end of the day, according to the statute that applies to our review, don't we just look at whether or not there was evidence to support the ruling by the ALJ from whatever source? Well, I think in this case it leads to a fundamental unfairness, because in the first reversal of the remand order, the reason why it was issued was because the Appeals Council recognized you need to further develop this record. And there was reasons for that. There was the consultative examination done by Dr. Kent Loffley, who gave a mini mental status examination. He wasn't a psychologist or a psychiatrist, but his mini mental status examination showed a lot of cognitive dysfunctioning from the claimant. And so the claimant, and it's very clear in the record, he's very poor, he can't really afford a whole lot, but he did manage to get a test done by Dr. Richard Madsen, and that was the only objective testing in this case. And that testing showed that if those results are true, then the claimant is in fact disabled. There's really nothing else in the record that would justify ignoring the opinion of Dr. Madsen, and that's what the Appeals Council found in the order of remand. So they sent it back, and the ALJ did get additional evidence. Well, she did not follow the order of remand, nor did she further develop the record. Not precisely correct. I agree with you, not precisely. But other evidence was obtained, right, to supplement the record that she previously reviewed? Not on the, I would say no. I'd say what you have is a single succulent, well, you have nothing, well, you have no consultative examination of any kind on remand. You have no objective testing done on remand. What you have is just the testimony of Dr. James Bruce, who's just listening in to the claimant testifying, and he admitted that the test that was done by Dr. Madsen was administered properly as far as he was aware. He said that on cross-examination. He also admitted that if the findings were true, there would be other indications of mental problems in his record and examinations, which there were not. Well, that's a matter of opinion, and I think the evidence actually contradicts Dr. Bruce on that. For example, the mental, mini-mental examination from Dr. Loffley, what that examination showed was actually very consistent with the formal testing done by Dr. Madsen. On page 647 of the record, Dr. Loffley found that he took off one point because the claimant didn't understand, didn't know the season. Three points were lost because he couldn't spell the word world backwards. He couldn't remember three objects, so he lost another three points. He wasn't, he lost two points because he couldn't follow the command, close your eyes, and he lost another point because he could not write a sentence. That is not a person who's showing a great deal of cognitive functioning, and yet Dr. Bruce characterized it as showing that there was inconsistency between that performance and the testing by Dr. Madsen, and I would say common sense tells us Dr. Bruce is wrong, that somebody who can't even write a sentence or follow an instruction, close your eyes, is not very functional. Also, take a look at the testimony that Dr. Bruce completely ignored. The claimant testified that he had trouble completing sentences. He would forget words. He couldn't think of the word to use. The judge herself had to feed words to the claimant during the hearing, like the word mood. He just drew a blank on it. She asked him, well, when you said to Kent Loffley, the doctor did the consultative examination, that you like to do puzzles, what puzzles were you talking about? He couldn't remember. He went off on a story about crossword puzzles, but he really didn't know what he was talking about. He said he's living in a garage. He said that he was waking up in the middle of the night riding a bike, and he didn't even know how he was in that situation. He couldn't even pay his bills. He had to spend two weeks trying to draw a drawing so that he could sell it for $34 to get his utilities turned back on. There's nothing in the testimony that shows that he's functioning well. There's nothing in any kind of test report, any medical report in this case, that shows that he is doing well. In fact, opposing counsel in his supplemental brief referred to some records, I think on page nine of his brief, saying that these records show that the appellant was functioning very well, and one of those records is on page 761 of the exhibits, and that's the only record that opposing counsel referred to that has anything to do with mental health. That's from the Spanish Peaks Behavioral Health Clinic, and reading from page 761, which is a page that opposing counsel thought is great evidence to show how functional the appellant was and how justified the ALJ's decision was, if you look at the comments in that record about mental status or results of mini mental status exam, it reads, Arthur rapidly cycled through emotions and thoughts as he responded to and could be related to his head injury. He had characteristics of antisocial personality disorder, and further assessment will determine if it is his personality or learned way of behaving that he would like to change. The record also below that indicates that a lot of his behavior... You know, all this factual recitation is quite interesting, but what's the relevance? I mean, what is your claim to error here? What is our standard of review? Fine, but that's a question of law, right? I suppose that's a question of law. If we have jurisdiction, then we have to ask, what was the legal consequence of the failure to follow the remand order? Well, just think of it in simple fairness. Fairness is interesting, but I don't know what... This note that I just read, it did indicate that further assessment could determine what's going on. And that is exactly what the Appeals Council wanted the Administrative Law Judge to do. So on the merits and the usual review that we would conduct under 42 U.S.C. Section 405G, you would say that our record is inadequate to support the ALJ's conclusion. Right, because what she's doing is saying, well, the record isn't fully developed, therefore I'm going to hold it against the appellant, when the whole purpose for that remand order was to prevent that from happening. And think about the situation the appellant is in. He's poor, he can't afford to get this done, and when he did, the Administrative Law Judge said, I'm going to look at that because you paid for it with skepticism. So the best way to develop the record is to get the consultative examination and additional testing done. And who would pay for that? That would be done by the state, the government, and that's typically how it's done in these cases. That could have been done regardless of his ability to afford it. Correct. And I think it really should have been done just with the... Excuse me, I'd like to reserve the rest of my time for rebuttal. Okay, thank you. May it please the Court, my name is Noah Schaubacher, I represent the Commissioner of Social Security. It sounds like the Court is interested in the question of the standard of review and whether there was harmless error here. If we're talking about the standard of review, that is substantial evidence, which comes to us from 42 U.S.C. Section 405G, and under that... In a traditional case, that's true, but in this case, the Appeals Council ordered the ALJ to reconsider the case further and issued the remand order. The ALJ, fairly specific remand order, the ALJ clearly did not follow some aspects of it, but instead apparently decided to go off on her own and make a factual determination ignoring aspects of the remand order. And we're told that there was a subsequent appeal and that on subsequent... And that on appellate review, the basically not answering the question about whether there was noncompliance with the remand order. I think that Mr. Noriega is incorrect when he characterizes the Appeals Council's denial of review, which is the second Appeals Council decision here, as not providing any explanation, Your Honor. First, the Appeals Council said, we do not find any reason under our regulations to order further review. And then to directly address... That's correct, Your Honor, to order review, or to grant the request for review. And then the Appeals Council goes on and directly addresses the issue that Mr. Noriega raised, which was he complained that the ALJ did not follow the Appeals Council's original remand order. And what the Appeals Council said is, we have considered whether the Appeals Council found that the ALJ did not abuse her discretion. So it's not that the Appeals Council didn't provide any justification. It's that it sounds like Mr. Noriega would have liked more justification. But the Appeals Council was not required to provide additional justification for that decision. That rendered the ALJ's second decision, that's the 2016 decision, the final decision for purposes of your review. So the Appeals Council's denial of review in 2016, I believe, is actually not before this Court. Do we consider it? Since they said, hey, that's okay, go ahead? I think that's an indication of how the Court should look at the case, Your Honor. Giving deference to the... Meaning it doesn't carry the day, but we could consider it? That's correct, Your Honor. Giving deference to the Appeals Council's subsequent interpretation of its original order... Where do we get the deference? Southern Utah Wilderness Alliance, Your Honor, which is the case that we cited in our brief, suggests that the Court should look to not just the text of the order, but also the context of the order and the subsequent agency action as a result. That's in the world of Chevron, isn't it? It is similar to Chevron. That's not here, right, is it? We're not in Chevron world here? We are not in Chevron world, Your Honor. Are we under APA review? I don't believe so, Your Honor. We're under review using the Social Security Act. So the review is similar, but the Social Security Act does set forth certain different jurisdictional and also evidentiary rules that are not present in the APA. What does the Social Security Act tell us about our review of an assertion of noncompliance with the previous remand order? The Act is silent on that, Your Honor. However, we believe that because the principles in Southern Utah Wilderness Alliance are analogous in this case. Moreover, the standard of review of substantial evidence is one that is very favorable to us. And in this case, there is substantial evidence supporting the ALJ's decision. Among that is the additional evidence that Mr. Nareha submitted to the ALJ after the Appeals Council ordered remand. That includes a number of mental status and psychiatric examinations by Mr. Nareha's treatment providers. Those showed grossly normal mental status, normal affect, normal judgment. At other times, mental status examinations showed average intellect, intact judgment, intact attention, insight, and especially intact memory. So it's not that the only evidence in the case supported Mr. Nareha. In fact, there is other evidence that Mr. Nareha himself provided that showed he was not as limited as Dr. Madsen claimed. We also have the testimony... We also have the testimony of Dr. Bruce. And one of the things that's important about Dr. Bruce is not only did he observe Mr. Nareha at the administrative hearing, but he also reviewed all of the medical documents in the record, which he testified to on page 50 at the very beginning of his testimony. So you can make a diagnosis by sitting in and watching a person testify and looking at the medical records? I don't know that he made a diagnosis, Your Honor, but what he did do was evaluate Mr. Nareha's limitations based on the evidence in the record. He was not purporting to examine Mr. Nareha. He was not purporting to testify that he had examined Mr. Nareha. Instead, he was testifying based on certainly his observations of Mr. Nareha at the hearing, but also his review of Mr. Nareha's medical records. So not a diagnosis. What was it? As I said, Your Honor, it was a testimony about Mr. Nareha's limitations based on, among other things, Dr. Laughley's diagnosis that Mr. Nareha had a mild cognitive impairment. What do we do with the regulations that require the ALJ to take action that is ordered by the Appeals Council? Shall take any action that is ordered. Shall. Certainly, Your Honor. I think that we have two arguments there. The first is we don't believe that the ALJ violated the remand order, as we explain in detail in our briefs. But even if the Court finds that the ALJ violated the remand order, as both parties agree, harmless error principles should apply. And that's something that this Court has applied in other cases, other Social Security cases. And the important thing here is that... Let's see here. Let me just look at my notes here, Your Honor. I apologize. Wall v. Astru is a case in which the Court has applied harmless error principles to Social Security cases. And going back a little earlier, St. Anthony v. U.S. Department of Health and Human Services, I think, sets the legal standard there, which is that the party challenging the action below has to establish that they've been harmed. That's consistent with the Supreme Court's decision in Shinseki v. Sanders, which is the 2009 case we cite in our briefs. And the problem here is that Mr. Nareha has not shown how he was harmed. As we've discussed in our briefs, substantial evidence supports the ALJ's decision. Substantial evidence doesn't mean overwhelming. It doesn't mean that there was no other possible outcome. It just has to mean it was one reasonable outcome based on the evidence. And the Supreme Court recently reaffirmed that in the BSTEC decision. It's more than a mere scintilla, but it's enough evidence that would convince a reasonable mind. And the evidence following that Mr. Nareha submitted, normal mental status examinations, normal psychiatric findings, as well as Dr. Bruce's testimony, more than meets that standard. And that's not what the Supreme Court has said the standard is, and that's not what this court has said. Well, and we'd like to think that the Appeals Council's orders would mean something. We agree, Your Honor. And the Appeals Council's order is an indication that they were satisfied the ALJ had substantially complied. No, I mean, when they make a specific direction. I mean, this is rather unusual in these types of cases to see something as specific as this. And as we argued in our briefs, Your Honor, our belief is that the Appeals Council's direction was conditional. They remanded initially not because the record lacked evidence, but because they were concerned about the ALJ's evaluation of Dr. Madsen's opinion. So it wasn't that the overall record was lacking. It was one specific consideration by the ALJ. And what that was was the ALJ said, I'm concerned that among other things, she gave less weight to Dr. Madsen's opinion because Mr. Narayho was referred by his counsel. It just strikes me as strange that in a typical administrative law case, that an appellate review counsel, say in the Environmental Protection Agency or in any other agency context, can issue an order on remand ordering the ALJ to do certain things in supplementing the record or in aid of further review. The ALJ doesn't do it, does something else. And then our review is substantial evidence review rather than whether there was an abuse of discretion or some other standard that would normally apply. I mean, it seems to me you're skipping a step by jumping to substantial evidence review. And even stranger, or even more strange, help me with my grammar here. Even stranger is the proposition that we're reviewing for harmless error. I mean, wow. Strange. I was hoping you'd help us through this dilemma and instead you're just jumping to substantial evidence review. And maybe that is the correct answer, but I sure would like to have a couple of cases that tell me that. Of course, Your Honor. I think that we've never denied that the court can determine whether the ALJ followed the correct legal standards. One of the cases we cite for that is Lax v. Astor. Well, it's not a question of whether we can. The question is whether we should. I think under principles of administrative law, Your Honor, the that's one of the things that we explain in our answer to the supplemental questions in the first section is that the court has the authority to look at both substantial evidence and legal compliance. But then applying the well-settled principles of harmless error, even if the ALJ did not comply with the regulations, the question is what harm resulted. There has to be a showing of harm and Mr. Noreha has not made a showing of harm sufficient to merit remanding his case. The Supreme Court in the Sanders decision explained that usually it's the party below that's required to show that they were harmed by the decision. And in fact, it's only in the criminal context that the government has to prove that an as we've explained, even if the ALJ did not comply with the appeals council's remand order, and we believe that. Well, did the ALJ, the appellate council conduct a substantial evidence review on the merits of the ALJ's decision? I believe they did, Your Honor. What do you mean believe? Did they or didn't they? They said that they did not find a reason under our regulations to order remand. And one of the reasons that they did not find a reason under our regulations to order remand was that they did not find a reason under our regulations to order remand. But they didn't say anything about substantial evidence, did they? That's correct, Your Honor. However, our regulations, one of the bases under which the appeals council can grant review is if the decision lacks substantial evidence. So while the appeals council did not explicitly state that they had reviewed for substantial evidence, the regulations themselves, finding compliance with the regulations, would show that the ALJ or that the appeals council considered for substantial evidence. And as I said, they then went on and they explicitly addressed Mr. Nareha's claim that the concern that the ALJ had not complied with the appeals council remand order. And so they found that there was no reason to remand under substantial evidence basis, but also because the ALJ had not abused her discretion in complying with that order. So again, as I've said. And that appellate, the decision on appellate review, is in the record? Yes, it is, Your Honor. It's the first page of the record, Your Honor. That's the way that all social security records are organized. And so it's the first page of the record for your review. Thank you. So we believe that not only does substantial evidence support the ALJ's decision, as we discussed in our brief, but also Mr. Nareha has been unable to show that he was harmed by the ALJ's subsequent decision or potential lack of compliance with the appeals council's remand order. For these reasons, we believe that remand is not appropriate and instead the ALJ should be affirmed. Thank you. Thank you. First of all, Dr. Bruce did not observe the appellant during the hearing. Dr. Bruce appeared by telephone. That's what I thought. He never once looked at the appellant. As far as this issue about harm, nobody can say, given this record, that additional psychological testing wouldn't have come out in favor of the appellant. And that's where the problem is. In his testimony, he didn't say that the appellant didn't have cognitive impairment. He said he did. He just was not sure of the level of cognitive impairment, which begs the question, get additional testing then. Dr. Bruce never said he doesn't have a personality disorder. He just said it wasn't developed in the record, which means further testing and a consultative examination could have further developed that in the record. Dr. Bruce never said otherwise. Dr. Bruce never said that the claimant didn't have post-traumatic stress disorder. What he said was he just didn't think the record was developed enough. So even Dr. Bruce's testimony, you read it in the best possible light for the other side, it still doesn't get around the issue that the administrative law judge did not develop the record. And to rely upon a record that's not developed clearly to deny the appellant benefits just seems unjust. Did the claimant ask for opportunity to supplement the record, expand testimony, add to it? We couldn't. He didn't have the financial resources to get the consultative exam done or any additional testing. And even if he did, the judge would have been looking at it with skepticism just like she did with Dr. Madsen's report. The first part of your answer helps. The second part is okay. And so I just don't see why you would defer to the appeals counsel in this case when the record, to the extent that they're justifying their decision, they're doing it based upon the administrative law judge's failure to develop the record further as she was instructed to do, which I just think, you know, we're talking in circles at that point. The case should be reversed and remanded. Thank you. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted.